United States District Court
Southern District of Texas

**ENTERED**

November 05, 2020

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CLARENCE EVANS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-3627 |
| | § | |
| GARRETT LINDLEY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Clarence Evans sues over his May 2019 encounter with Sergeant Garret Lindley of Harris County Constable's Office Precinct Four. Evans sues Lindley in his individual capacity under 42 U.S.C. § 1983, for allegedly violating his Fourth and Fourteenth Amendment rights. After discovery, Lindley moved for summary judgment, and Evans responded. (Docket Entries No. 27, 28, 29, 30). Based on the motion, briefs, and applicable law, the court grants the motion. The reasons are explained below.

**I.      Background**

Before considering Lindley's motion, the court must resolve several evidentiary objections and arguments.

**A.      Evidentiary Objections**

Evans objects to Lindley's Exhibits B, C, D, E, F, and G, as hearsay and unauthenticated business records,[1] and Lindley's Exhibit H, as lacking relevance. (Docket Entry No. 29 at 4). Lindley's Exhibit B is a Harris County Constable's Office Incident/Investigation Report that describes the incident at issue. (Docket Entry No. 27-4 (Exhibit B)). The report is not hearsay

---

[1] The court notes that, notwithstanding his objections, Evans cites many of those exhibits in his opposition to Lindley's motion for summary judgment. (Docket Entry No. 29 at 5–8).

because it is a public record.  *See* FED. R. EVID. 803(8)(A)(ii); *Doe v. Edgewood Indep. Sch. Dist.*, No. 5:16-CV-01233-OLG, 2019 WL 1118516, at \*4 (W.D. Tex. Mar. 8, 2019), *aff'd*, 964 F.3d 351 (5th Cir. 2020) ("FBI, police and District investigation reports are generally admissible under Fed. R. Evid. 803(8), and it is only when [a party] relies on certain third-party statements contained in those reports *for the truth of the matter asserted* that portions of the reports become inadmissible for that purpose." (emphasis in original)).  The report is not self-authenticating, but the authentication requirement is not demanding, and the report meets that low standard.  *See* FED. R. EVID. 901, 902.  The court overrules Evans's objection.

Lindley's Exhibit C consists of his responses to Evans's requests for production and admissions and written interrogatories.  Lindley's responses were sworn to under oath.  (Docket Entry No. 27-5 at 25 (Exhibit C)).  The court overrules Evans's objection.

Lindley's Exhibit D is a photograph alleged to be of Quintin Prejean.  That photograph was discussed in Evans's deposition.  (Docket Entries No. 27-2 at 36–37 (Exhibit A); 27-3 at 1 (Exhibit A1)).  The same is true of Lindley's Exhibit G, which is a picture of a Facebook post created by Evans that contains side-by-side pictures of Quintin and Evans.  (Docket Entries No. 27-2 at 38–41 (Exhibit A); 27-3 at 2 (Exhibit A1)).  The court denies Evans's objections as moot.

Lindley's Exhibit E is a screenshot of an arrest warrant.  (Docket Entry No. 27-7 (Exhibit E)).  It is not hearsay, because it is not being used to establish the truth of the matter asserted.  *See* FED. R. EVID. 801(c)(2).  The exhibit is evidence of Lindley's belief that he was pursuing an outstanding arrest warrant, not evidence that the warrant existed.  The exhibit satisfies the low standard for authentication.  *See* FED. R. EVID. 901.  The court overrules Evans's objection.

Lindley's Exhibit F is described as a picture of Evans.  (Docket Entry No. 27-8 (Exhibit F)).  Nothing in the picture identifies the man.  The court sustains Evans's objection.

Lindley's Exhibit H is Evans's responses to Lindley's requests for production and admissions and written interrogatories.  (Docket Entry No. 27-10 (Exhibit H)).  Evans argues that his responses are not relevant.  The court overrules his objection.  The responses are relevant; for example, Evans admitted that he did not have any physical injuries from his interaction with Lindley and that he refused to identify himself to Lindley.  (Docket Entry No. 27-10 at 3 (Exhibit H)).

Based on those rulings, the summary judgment record consists of Lindley's Exhibits A, B, C, D, E, G, H, I, J, and K, and Evans's Exhibits A, B, C, D, E, F, and G.  (Docket Entries No. 27-2 (Exhibit A), 27-3 (Exhibit A1); 27-4 (Exhibit B), 27-5 (Exhibit C); 27-6 (Exhibit D); 27-7 (Exhibit E); 27-9 (Exhibit G); 27-10 (Exhibit H); 27-11 (Exhibit K); 28 (Exhibits I, J); 29-1 (Exhibit A); 29-2 (Exhibit B); 29-5 (Exhibit E); 29-6 (Exhibit F); 29-7 (Exhibit G); 32 (Exhibits C, D)).

### B.    Spoliation

Evans asserts that Lindley committed spoliation—the impermissible destruction of evidence—because he did not provide a video recording of the incident from his body camera. (Docket Entry No. 29 at 17–19).  It is undisputed that, although Lindley tried to activate his body camera, it did not record during the incident.  (Docket Entries No. 29 at 6; 32 at 27:30–34:30, 1:06:40–1:12:20 (Exhibit C)).  Lindley did not commit spoliation.  *See Crain v. City of Selma*, 952 F.3d 634, 639–40 (5th Cir. 2020) (denying sanctions for spoliation was not an abuse of discretion when there was no evidence that the footage at issue existed); *De Lost Santos v. Kroger Texas, LP*, No. 3:14-cv-3086-g, 2015 WL 3504878, at *6 n.4 (N.D. Tex. June 3, 2015) ("[T]he duty to preserve evidence does not include the duty to create evidence." (emphasis removed)).

3

### C.    Factual Background

This brief description of the factual background is based on the summary judgment evidence.  On the early evening of May 8, 2019, Lindley was in uniform and patrolling in his Constable's Office vehicle when a dispatch call informed him that two bail bondsmen, Kalie and Tavarre Lindon, had information about a potential wanted fugitive in the area.  Lindley phoned the Lindons and arranged a meeting.  According to Lindley, the Lindons told him that they were looking for a male fugitive with an active warrant from Louisiana and that they had seen a man who matched the fugitive's description walking a dog in a nearby neighborhood.  The Lindons showed Lindley a photograph of the man sought in the warrant, identified as Quintin Prejean, and the warrant information.  Lindley took a picture of the Lindons' photograph, using his cellphone, and verified the warrant information with dispatch.  He then drove toward the area the Lindons identified.  At some point, Lindley called his lieutenant, who encouraged him to proceed.  (Docket Entries No. 27-4 at 3 (Exhibit B); 32 at 25:45–34:30, 47:28, 59:00, 2:32:23–2:41:20 (Exhibit C)).

While driving, Lindley saw a man, later identified as Evans, standing in a driveway.  After comparing Evans to his cellphone picture, Lindley believed that Evans was Quintin.  Lindley parked his vehicle and got out, leaving his cellphone.  As he approached Evans, Lindley attempted to activate his on-person recording equipment, but it did not begin recording.  Lindley told Evans that there was a dog missing in the area, that someone had accused Evans of stealing the dog, and that Lindley needed to see Evans's identification.[2]  Evans stated that the dog was his, and he retrieved his wallet from his pocket.  At this point, Evans was standing on the driveway, about five

---

[2]  Lindley agrees that, based on a "missing dog" poster he saw in the area, he fabricated an accusation that Evans's dog was stolen as a means of starting a conversation with Evans and of gaining access to his identification.  (Docket Entry No. 32 at 27:30–34:30, 1:51:50–1:53:00, 2:36:45–2:41:20 (Exhibit C)).

feet from the street, and Lindley stood either on the street or on the driveway between Evans and the street.

What happened next is disputed. According to Evans, he gave Lindley his name while reaching for his wallet, but Lindley did not believe him.  Lindley told Evans that there was a warrant against him in Louisiana; that Evans, who Lindley addressed as "Red" or "Reg," was a wanted fugitive; and that Lindley was "taking [Evans] in."  Evans responded that he was not the person Lindley was looking for.

According to Lindley, after Evans pulled his wallet from his pocket, he suddenly became hostile, raising his voice and refusing to show his identification or give his name.  Lindley then informed Evans that he was pursuing an outstanding warrant.  In his deposition, Lindley testified that he believed that Evans was Quintin based on Evans's physical resemblance to the man in the picture provided by the Lindons,[3] Evans's refusal to show his identification, and Evans's behavior. (Docket Entries No. 27-2 at 7–11, 13–16, 19–24, 27, 34, 52, 69–70 (Exhibit A); 29-1 (Exhibit A); 32 at 27:30–35:30, 36:00–37:50, 59:50–1:05:00, 1:57:00–1:57:50, 2:36:45–2:41:20, 2:46:00–2:48:00 (Exhibit C)).

The parties agree on what happened next.  Evans, wallet in hand, turned and walked further up the driveway.  Lindley followed, because he was worried that Evans would barricade himself inside the house or retrieve a weapon.  The two stopped next to a car that was parked about 10 feet from the street.  Evans's wife began recording using her cellphone.  Her recording shows that Lindley placed one open hand on Evans's upper back and, with his other hand, held Evans's right wrist.  Evans was still able to walk and move his arms and hands.  Evans was holding his wallet

---

[3]  A Facebook post created by Evans showed side-by-side pictures of Quintin and Evans.  (Docket Entry No. 27-3 at 2 (Exhibit A1)).  That post, as well as other pictures received in Evans's deposition, lead the court to conclude that Lindley's mistaken identification of Evans as Quintin was objectively reasonable. (Docket Entry No. 27-3 at 1–2, 9 (Exhibit A1)).

in his left hand while he and his wife repeatedly told Lindley that Evans's name was not Quintin. Evans repeatedly refused to tell Lindley his name and show his identification. Lindley offered to show Evans a picture of the suspect for whom he was searching, which was on his cellphone in his vehicle, but Evans refused to go to the vehicle with Lindley. (Docket Entries No. 27-2 at 17, 25–27, 31–35 (Exhibit A); 28 (Exhibits I, J); 32 at 59:50–1:06:00 (Exhibit C)).

Lindley radioed for another police unit to be sent. Deputy Jeremy Gheen arrived a few minutes later. Lindley ordered Gheen to retrieve Lindley's cellphone from his vehicle. Lindley then showed Evans the picture of Quintin on his cellphone. Evans denied that he was the person in the picture. In the argument that followed, Lindley obtained Evans's wallet. Evans alleges that Lindley snatched the wallet from his hand, without his consent. Lindley testified that he was holding Evans's hand for a short time, and that Evans was pushing him with that hand, so Evans may have released his grip on the wallet, allowing it to fall into Lindley's hand.

Once Lindley had Evans's wallet, he opened it, saw Evans's identification, recognized that Evans was not Quintin Prejean, released Evans, and returned his wallet. Lindley admits that Evans did not explicitly consent to having the wallet opened. After returning Evans's wallet, Lindley and Gheen went to their vehicles and drafted an incident report. They gave a copy to Evans and left. (Docket Entries No. 27-2 at 30, 35–37, 43–43, 50, 75 (Exhibit A); 27-4 (Exhibit B); 27-5 (Exhibit C); 27-10 (Exhibit H); 27-11 at 1 (Exhibit K); 28 (Exhibits I, J); 29-1 (Exhibit A); 32 at 59:50–1:06:00, 1:12:50–1:15:10, 1:32:00–1:36:00, 2:02:00–2:04:00 (Exhibit C)).

In June 2019, Evans sued Lindley in his individual capacity in state court, alleging that Lindley violated his Fourth and Fourteenth Amendment rights. Evans sought damages for pain and suffering and emotional distress, exemplary damages, and attorneys' fees under 42 U.S.C.

§ 1988.  Lindley timely removed and moved for summary judgment, Evans responded, and Lindley replied.  (Docket Entries No. 1, 27, 29, 30, 31, 32).

## II.    The Legal Standards

### A.    Summary Judgment

 "Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (per curiam) (internal quotation marks omitted); *accord* FED. R. CIV. P. 56(a).  "A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (internal quotation marks omitted).  "The moving party . . . bears the initial responsibility of informing the district court of the basis for its motion," *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (internal quotation marks omitted), and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial."  *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (per curiam) (internal quotation marks omitted).  While the party moving for summary judgment must demonstrate the absence of a genuine and material factual dispute, it does not need to negate the elements of the nonmovant's case.  *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (per curiam) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)).  "[A] fact is 'material' if its resolution could affect the outcome of the action."  *Aly v. City of Lake Jackson*, 605 F. App'x 260, 262 (5th Cir. 2015) (per curiam).  "If the moving

party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Exploration, LLC v. Steadfast Ins. Co.*, 767 F.3d 503 (5th Cir. 2014) (internal quotation marks omitted).

"When the moving party has met its . . . burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Bailey v. E. Baton Rouge Parish Prison*, 663 F. App'x 328, 331 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 317 (5th Cir. 2016) (internal quotation marks omitted). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018), *cert. denied sub. nom. City of Fort Worth, Tex. v. Darden*, 139 S. Ct. 69 (2018).

### B.    Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013) (internal quotation marks omitted). Qualified immunity provides protection "from suit, rather than simply a defense to liability." *Porter v. Valdez*, 424 F. App'x 382, 386 (5th Cir. 2011) (per curiam).

Qualified immunity applies unless the public official (1) violated a statutory or constitutional right (2) that was clearly established at the time of the challenged conduct. *See*

*Angulo v. Brown*, No. 19-40887, 2020 WL 6220005, at *3 (5th Cir. Oct. 23, 2020); *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc). "A court has discretion to decide which prong to consider first." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

For the first prong, the court asks "whether, taking the facts in the light most favorable to the plaintiff, the officer's alleged conduct violated a constitutional right." *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009). If the alleged conduct "did not violate a constitutional right, [the court's] inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity." *Id.*

For the second prong, the court asks whether the defendant's actions "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (internal quotation marks omitted). "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle*, 560 F.3d at 410 (internal quotation marks omitted). The court "must ask whether the law so clearly and unambiguously prohibited [the defendant's] conduct that 'every reasonable official would understand that what he is doing violates [the law].'" *Morgan*, 659 F.3d at 372 (emphasis removed) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks omitted)). The court must evaluate whether "the violative nature of *particular* conduct is clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 577 U.S. at 12 (internal quotation marks omitted). To deny qualified immunity, the court "must be able to point to controlling authority— or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id.* (internal quotation marks and citation omitted).

"Ultimately, the central concern is whether the official has fair warning that his conduct violates a constitutional right." *Clarkson v. White*, 943 F.3d 988, 993 (5th Cir. 2019).

"Once an official pleads [qualified immunity], the burden . . . shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "The plaintiff bears the burden of negating qualified immunity, . . . but all inferences are drawn in his favor." *Id.* (internal citation omitted).

## III.   Analysis

Although Evans's briefs refer to multiple allegedly unlawful acts, the § 1983 claim he asserts is based on Lindley's alleged detention of Evans. (Docket Entries No. 1 at 10–11; 29 at 11). That detention is the issue before the court. *See Hoffman v. L & M Arts*, 838 F.3d 568, 576 (5th Cir. 2016) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court. . . . Accordingly, a district court considering a defendant's motion for summary judgment does not err by disregarding a theory of liability asserted in the plaintiff's response that was not pleaded.").

Evans's Fourth Amendment wrongful detention claim fails, because he does not allege facts or present record evidence that could show that Lindley violated clearly established law. Evans cites cases reciting general legal principles, but they involve facts different from those that Evans alleges and presents.[4] No case involved an officer, who reasonably believes that he is executing an arrest warrant for a person he finds outside, standing on that person's driveway,

---

[4] *Collins v. Virginia*, 138 S. Ct. 1662 (2018) (police, without a warrant, entered a driveway, removed a tarp from a parked motorcycle, took photographs, and ran a search of the motorcycle's license plate and vehicle identification numbers); *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002) (police officer, using physical force, stopped and arrested a driver); *Husband v. Bryan*, 946 F.2d 27 (5th Cir. 1991) (sheriff and a deputy exceeded the scope of a warrant by using bulldozers to dig up three acres of the plaintiff's land).

entering the driveway, asking that person for his identification, and, in response to that person's angry behavior, lightly and briefly restraining that person.   The undisputed facts show that, throughout the interaction, Lindley placed one hand flat on Evans's back and held Evans's wrist; Evans remained able to walk and move his arms and hands; Lindley did not use any other force; and Evans was not physically injured.  (Docket Entries No. 27-2, 30–31 at 25 (Exhibit A); 27-10 at 3 (Exhibit H); 28 (Exhibits I, J)).

Evans relies on a concurrence in *Terry v. Ohio*, 392 U.S. 1, 34 (1968) (White, J., concurring), stating that a detained person "is not obligated to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest."  That one statement falls far short of authority clearly establishing that Lindley's conduct was unconstitutional.  Among other problems, the Supreme Court has not "read" Justice White's statement "as controlling."  *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 187, 189 (2004) (holding that a state's "stop and identify" statute did not violate the Fourth Amendment).

None of Evans's cited cases "squarely govern[] the specific facts at issue" here, *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (internal quotation marks omitted), or constitute "controlling authority" that "defines the contours of the right[s] in question with a high degree of particularity," *Morgan*, 659 F.3d at 372.  Evans has not alleged facts or pointed to summary judgment evidence showing that, on May 8, 2019, it was "beyond debate" that Lindley's conduct was unlawful.  *al-Kidd*, 563 U.S. at 741; *see also Morgan*, 659 F.3d at 372 ("Where no controlling authority specifically prohibits a defendant's conduct, . . . the law cannot be said to be clearly established.").

**V.      Conclusion**

Lindley's motion for summary judgment, (Docket Entry No. 27), is granted.   Final judgment is entered by separate order.   The motions in limine, (Docket Entries No. 33, 35), are denied as moot.

SIGNED on November 5, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge