# United States Court of Appeals
## for the Fifth Circuit

United States Courts
Southern District of Texas
FILED
*December 27, 2021*
Nathan Ochsner, Clerk of Court

No. 21-20118

United States Court of Appeals
Fifth Circuit
**FILED**
December 2, 2021
Lyle W. Cayce
Clerk

CLARENCE EVANS,

*Plaintiff—Appellant,*

*versus*

GARRETT LINDLEY,

*Defendant—Appellee.*

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-03627

Before BARKSDALE, ENGELHARDT, and OLDHAM, *Circuit Judges.*
PER CURIAM:*

Plaintiff brought this 42 U.S.C. § 1983 action in Texas state court claiming that the Defendant law enforcement officer unlawfully detained him in violation of the Fourth and Fourteenth Amendments. After removal and discovery, the district court granted the Defendant's motion for summary judgment and denied Plaintiff's motion for reconsideration. We AFFIRM.

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 21-20118

## I.

Garrett Lindley is a law enforcement officer working for the Harris County Constable's Office. In May 2019, he received a dispatch call alerting him that two bail bondsmen believed that Quintin Prejean, a wanted fugitive with two active felony warrants, might be in the area. Lindley met with the bondsmen, who told him they had seen a man matching Prejean's description walking a dog nearby. After taking a cell phone photograph of Prejean's mugshot and verifying the warrant information with dispatch, Lindley drove to the area where the bondsmen claimed to have seen Prejean. Lindley spotted Clarence Evans, compared Evans to the cell phone picture, believed that he was Prejean, and approached him under the pretext of asking about Evans' dog. Although the details are disputed, Lindley informed Evans that he was looking for a fugitive; Evans replied that he was not the man for whom Lindley was looking. Evans retrieved his wallet and held it in his hand but refused to tell Lindley his name or provide identification.[1] Evans began to walk up his driveway towards his garage. Lindley, still believing Evans to be Prejean, followed.

At this point, Evans' wife began recording with her cell phone.[2] Lindley placed an open hand on Evans' back and used his other hand to hold Evans' right wrist. Evans continued to hold his wallet in his left hand. Both

---

[1] We note that Evans' statement of facts is inconsistent with the record in this case. For example, Evans claims that he provided his name to Lindley when the encounter began. This contradicts Evans' own allegation that he refused to provide his name and identification, his response to a request for admission to the same effect, and the joint proposed pretrial order wherein Evans' refusal to provide his name and identification is listed as an admission of fact.

[2] Lindley's bodycam was not active during the encounter. There is no mention of any dashcam or other bodycam footage in the record. Thus, the only video evidence in this case is the cell phone recording taken by Kenya, Evans' wife. That evidence consists of two videos, about seven and a half minutes in total, filed manually with the district court.

No. 21-20118

Evans and his wife repeated that Evans was "not Quintin." Lindley, meanwhile, told Evans that if he could "see the ID then we'll be done." Lindley offered to show Evans the photo of Prejean on Lindley's cell phone, to which Evans responded, "show me the picture, show me the picture." But upon learning that the picture was on a cell phone in Lindley's car, Evans declined to go with him to retrieve it. Evans continued refusing to tell Lindley his name. Lindley radioed for backup and Deputy Jeremy Gheen arrived shortly thereafter. Deputy Gheen retrieved Lindley's cell phone and, before showing Evans the photo, Lindley said "I want to do this so we're done." Lindley showed Evans the photo, saying "doesn't that look a lot like you?" Evans again denied that he was Prejean, and in the ensuing disagreement Lindley obtained Evans' wallet, though his method of doing so is disputed. Lindley, in a span of about five seconds, opened Evans' wallet, checked Evans' identification, saw that Evans was telling the truth, and returned the wallet. Lindley and Deputy Gheen drafted an incident report, provided it to Evans, and left the premises.

About a month later, Evans, represented by counsel, sued Lindley in Texas state court under 42 U.S.C. § 1983, claiming that Lindley's actions constituted an unlawful detention in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

## II.

We must first ascertain the issues properly before us.[3] The district court made a slew of evidentiary rulings, *Evans v. Lindley*, No. CV H-19-3627, 2020 WL 6504449, at *1–2 (S.D. Tex. Nov. 5, 2020), determined that the

---

[3] Evans asks the Court only to reverse the district court's grant of summary judgment and remand for further proceedings. But Evans briefed an additional evidentiary issue, so we conclude that he seeks relief on that ground as well.

3

No. 21-20118

only claim before it was an unlawful detention claim, *id.* at *6, and granted summary judgment on qualified immunity grounds. *Id.* As best we can tell, Evans argues that: 1) the district court erred in granting qualified immunity on the unlawful detention claim; 2) the district court erred in admitting a screenshot of two arrest warrants over Evans' hearsay and authentication objections; and 3) the district court erred in determining that Evans' claim concerning the search and seizure of his wallet was not properly raised in the pleadings. The first two issues are clearly before us; the third is not.

The district court granted summary judgment only on Evans' claim of unlawful detention in violation of the Fourth and Fourteenth Amendments, since this was the only claim under § 1983 that Evans asserted in his petition.[4] *Id.* at *6. Relying on this court's opinion in *Hoffman v. L & M Arts*, the district court concluded that Evans' search-and-seizure claim was raised for the first time in summary judgment briefing and, therefore, was not properly before it. *Id.* at *6 (citing *Hoffman v. L & M Arts*, 838 F.3d 568, 576 (5th Cir. 2016) (claims raised only in response to a summary judgment motion are not properly before the court)).

Evans must dispute that determination in his opening brief to avoid waiving his objection on appeal. *CenturyTel of Chatham, LLC v. Sprint Commc'ns Co.*, 861 F.3d 566, 573 (5th Cir. 2017). Even arguments nominally raised on appeal must be adequately briefed. A party must "clearly identify[] a theory as a proposed basis for deciding the case." *United States v. Scroggins*, 599 F.3d 433, 447 (5th Cir. 2010). This ordinarily involves "identify[ing] the relevant legal standards" and relevant circuit caselaw. *Id.*

---

[4] Evans commenced the suit with an "Original Petition" in Texas state court. This document is the operative complaint but will be referred to herein as a petition.

No. 21-20118

While Evans argues that the search and seizure of his wallet was unconstitutional, he does not argue that the district court erred in determining that the search-and-seizure claim was not properly before it. In his argument on reply, Evans cites no statement in his opening brief that ostensibly raises the issue. Thus, the argument is waived for failure to raise it in the opening brief. *CenturyTel*, 861 F.3d at 573. But even if the argument is raised, in his opening brief it is inadequately briefed and is waived for that reason as well. *Scroggins*, 599 F.3d at 447. Evans does not discuss the pleadings or cite authority on pleading standards, nor does he make any discernible argument that the district court erred in disregarding the search-and-seizure claim. This failure to raise the argument lulled Lindley into believing that Evans did "not challenge th[e] ruling on appeal," only to have Evans raise the issue in his reply brief. This sort of briefing is fundamentally unfair. When appellants raise arguments this way it deprives appellees of any meaningful opportunity, short of a disfavored surreply, to respond. *See RedHawk Holdings Corp. v. Schreiber*, 836 F. App'x 232, 235 (5th Cir. 2020) (per curiam) (surreplies disfavored). That is why we consider such arguments waived and do so here.

## III.

We next turn to whether there is a genuine dispute of material fact as to whether Lindley's detention of Evans was lawful. We hold that there is none and that Lindley is entitled to judgment as a matter of law. We therefore affirm.

### A. Standard of Review

We review a grant of summary judgment de novo and apply the same standard as the district court. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

No. 21-20118

law." FED. R. CIV. P. 56(a). We construe all the evidence and make all reasonable inferences in the light most favorable to the nonmoving party, but "will not consider evidence or arguments that were not presented to the district court . . . ." *Am. Fam. Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 895 (5th Cir. 2013) (per curiam) (internal quotation marks omitted). Further, when a party's story is "blatantly contradicted by the record . . . a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Thus, "facts established by video record" form the basis for our decision when they contradict those asserted by the parties. *Kokesh v. Curlee*, 14 F.4th 382, 385 n.2 (5th Cir. 2021). We are not limited to the district court's analysis and may affirm on any basis presented to the district court. *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 606–07 (5th Cir. 2014).

Because Lindley raised a qualified immunity defense, the "usual summary judgment burden of proof" shifts to Evans, "who must rebut the defense by establishing a genuine fact issue" material to whether Lindley's actions violated clearly established law. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)).

Qualified immunity has two prongs. The first requires us to determine "whether an official's conduct violated a constitutional right." *Id.* (citing *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)). The second requires us to determine "whether that right was clearly established at the time of the violation." *Id.* Answering either in the negative is enough for the official to prevail. *Id.* For an official to violate a clearly established right, "the contours of [that] right [must be] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of

6

No. 21-20118

generality." *Id.* at 742. Instead, "the violative nature of [the] particular conduct" at issue must be clearly established. *Id.* Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

## B. Factual Basis for Summary Judgment

At the outset we must resolve two disputes regarding the issue of mistaken identity. First, the district court examined "side-by-side pictures of Quintin [Prejean] and Evans" along with "other pictures received in Evans' deposition." *Evans*, 2020 WL 6504449, at *3 n.3. Based on this examination, the court concluded that "Lindley's mistaken identification of Evans as Quintin [Prejean] was objectively reasonable." *Id.* Lindley argues, relying on *United States v. Ferguson*, that this "finding must stand on appeal" absent a showing of clear error. But *Ferguson* was an appeal from denial of a motion to suppress. *United States v. Ferguson*, 816 F. App'x 991, 992 (5th Cir. 2020) (per curiam). This is an appeal from a grant of summary judgment reviewed de novo to determine if there is a genuine dispute of material fact. *Renfroe*, 974 F.3d at 599.

Evans asserts throughout his briefs that he and Prejean do not resemble each other and cites the same pictures in the record. Based on our review of the record, we agree with the district court that, even drawing all inferences in favor of Evans, an officer could form an objectively reasonable suspicion that Evans might indeed be Prejean. In fact, the Supreme Court has explained that "[t]he Fourth Amendment is not violated by an arrest based on *probable cause*, even though the wrong person is arrested, nor by the mistaken execution of a valid search warrant on the wrong premises." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (emphasis added) (citations omitted). As discussed below, a *Terry* or investigative stop (the police action at issue here) requires only reasonable suspicion, a lower hurdle than

No. 21-20118

probable cause. *United States v. Hensley*, 469 U.S. 221, 229 (1985). Because it would be objectively reasonable to suspect that Evans might be Prejean, and Evans provides no analysis or record evidence to the contrary, there is no genuine dispute as to whether Lindley had a reasonable suspicion that Evans was Prejean at the outset of the incident.

Next, several factual assertions are contradicted by the video record in this case. *See Kokesh*, 14 F.4th at 385 n.2 (video evidence prevails over contrary assertions). Evans repeats at various points that once Lindley produced the cell phone photograph of Prejean, the confusion of Evans with Prejean was "immediately dispelled" along with any reasonable suspicion that led to the stop. He also asserts that Deputy Gheen told Lindley that Evans was not Prejean, and that "he, Lindley, Evans, and Kenya, Evans' wife, each compared the person on the photo . . . to Mr. Evans and each person immediately acknowledged the man in the photograph was not Mr. Evans." But the video shows nothing of the sort. There is no discernible indication, verbal or otherwise, that Lindley or Deputy Gheen believed Evans was not the person in the photograph. There is likewise no support for the assertion that Deputy Gheen, Lindley, or even Kenya "acknowledged" that Evans was not the person in the photograph before Lindley searched Evans' wallet. What the video *does* show is that Kenya is too far away to see the photograph, so she could not have examined it in order to acknowledge anything. And of those who did examine the photograph—Deputy Gheen, Evans, and Lindley—only Evans makes any statement that he is not the person in the photograph. Deputy Gheen continues to stand by and hold Evans. He does not tell Lindley that Evans is not Prejean.

Evans' conclusory assertion that "[a]ny facts to the contrary are . . . disputed" is insufficient because "the mere existence of *some* alleged factual dispute . . . will not defeat . . . summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477

8

No. 21-20118

U.S. 242, 247–48 (1986). Evans cites no record support outside the video to create a genuine dispute. Thus, on our review of the record we find that there is no genuine dispute that the confusion regarding Evans' identity persisted until Lindley examined his identification and ascertained that he was being truthful.

### C. Whether Lindley Violated a Constitutional Right[5]

Evans claims that Lindley detained him unlawfully, violating his rights under the Fourth Amendment. Lindley does not contest that he detained Evans.

The Fourth Amendment, through the Fourteenth Amendment, prohibits unreasonable searches and seizures by state and local officials. U.S. CONST. amends. IV, XIV. Warrantless search and seizure are per se unreasonable unless they fall within an exception to the warrant requirement. *See Katz v. United States*, 389 U.S. 347, 357 (1967). One exception permits brief investigatory stops based on "reasonable suspicion, grounded in specific and articulable facts," that the person being stopped may be engaged in criminal activity or, more relevant here, "is wanted in connection with a completed felony." *Hensley*, 469 U.S. at 229; *see Terry v. Ohio*, 392 U.S. 1, 20–22 (1968). *Terry* governs this case. An investigative stop must be justified at the outset, and an officer's actions during the stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20; *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005).

---

[5] Our decision to engage with the first prong of qualified immunity analysis in no way reflects disapproval of the district court's decision to grant summary judgment on the second prong alone. District courts are busy places, and the Supreme Court has expressly recognized that foregoing lengthy first-prong analysis of issues that can be easily resolved on the second prong is permissible. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

No. 21-20118

Lindley's initiation of the investigative stop is squarely permitted by Supreme Court precedent. Again, officers meeting the reasonable suspicion standard may initiate a *Terry* stop of a person they suspect "was involved in or is wanted in connection with a completed felony." *Hensley*, 469 U.S. at 229. Thus, Lindley did not violate the law when he initiated the stop after he formed a reasonable suspicion that Evans was a wanted fugitive based on a comparison of Evans with the photograph of Prejean and a report by two bail bondsmen that Prejean might be in the area.

Further, Lindley's actions during the stop were reasonable and closely related to ascertaining whether Evans was Prejean and, if he was, preventing further escape. Lindley's initial approach, asking unrelated questions about Evans' dog, did not violate the Fourth Amendment. *See United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004) (en banc) (questioning on topics unrelated to the purpose of the stop does not alone violate the Fourth Amendment). Asking Evans for identification was quintessentially related to the purpose of the stop: determining if Evans was a wanted fugitive. Neither party contests that Lindley initiated physical contact only *after* Evans refused to provide his name or identification and began walking up the driveway. Evans' actions justified the additional restraint. A fugitive is likely to attempt an escape, and evasive or intransigent answers to questions regarding identity are suspicious since a wanted fugitive is unlikely to be truthful about his or her identity. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[E]vasive behavior is a pertinent factor in determining reasonable suspicion."); *Hill v. California*, 401 U.S. 797, 803 (1971) (noting, in the probable cause context, that "aliases and false identifications are not uncommon"). Finally, once

No. 21-20118

Lindley grabbed[6] Evans' wallet and checked the identification within, fulfilling the purpose of the stop, he immediately returned the wallet and released Evans, ending the detention. We therefore conclude that Lindley's actions were fully consistent with a lawful *Terry* stop and, as a result, there was no unlawful detention.

Evans' arguments to the contrary are unavailing. Beyond the odd citation to a case stating general Fourth Amendment principles, Evans fails to grapple with "*Terry*'s progeny, which includes thousands of cases." *Scroggins*, 599 F.3d at 447. Instead, he makes three arguments. First, he argues that when Deputy Gheen "dispelled the reasonable belief or suspicion that Mr. Evans was the suspect," the detention did not end and was therefore unlawful. But as we discuss above, there is no evidence in the record supporting the assertion that Deputy Gheen had any opinion whatsoever as to whether Evans resembled Prejean, much less that he "dispelled" the suspicion already formed by Lindley. This argument falls flat.

Next, Evans argues that his driveway is "curtilage" within the meaning of Fourth Amendment law and, as a result, Lindley's invasion of the driveway to detain Evans violated the Fourth Amendment. The record shows that the entire incident took place on Evans' open driveway and on the lawn beside it. Whether a particular location is curtilage depends on four factors: the proximity to the home, whether the area is within an enclosure that also encapsulates the home, what the area is used for, and the "steps taken by the resident to protect the area from observation by [passers-by]." *United States v. Dunn*, 480 U.S. 294, 301 (1987). Our decision in *United States v. Beene* compels our holding here that Evans' driveway is not curtilage. 818 F.3d 157,

---

[6] Although the parties dispute how Lindley obtained the wallet, Evans describes Lindley as "snatch[ing]" or "grabb[ing]" it. Viewing the video in the light most favorable to Evans, as we must, "grabbed" is an appropriate term.

No. 21-20118

162 (5th Cir. 2016). As in *Beene*, "only the driveway's proximity to the residence weighs in favor of a finding that it was part of the curtilage of the home." *Id.* It is not enclosed and is therefore distinct from the partially enclosed and set back driveway at issue in *Collins v. Virginia*, 138 S. Ct. 1663, 1670–71 (2018). Evans asserts no special usage that would confer curtilage status. Neither does Evans describe any steps he took to ensure the driveway, clearly visible from the street and surrounding neighborhood, was protected from observation. Evans' driveway is not curtilage, and he was not afforded extra protection by being on it.

Finally, Evans argues that Lindley could have pursued alternate methods of investigating his reasonable suspicion. This argument also fails. "The Supreme Court has instructed that, once an officer has established reasonable suspicion, appellate courts are limited in reviewing how the police choose to alleviate that suspicion" if the intrusion is not of excessive length. *United States v. Vickers*, 540 F.3d 356, 362 (5th Cir. 2008). A contrary "rule would unduly hamper the police's ability to make swift, on-the-spot decisions . . . and it would require courts to indulge in unrealistic second-guessing." *United States v. Sokolow*, 490 U.S. 1, 11 (1989) (cleaned up).[7]

Because the record, construed in the light most favorable to Evans, does not create a genuine fact dispute as to whether Lindley violated a constitutional right, Lindley is entitled to summary judgment. *See Brown*, 623 F.3d at 253.

---

[7] Evans also discusses Texas' "stop-and-identify" law, but it is unclear why. Lindley did not arrest Evans for his failure to produce identification. To the extent Evans argues that Texas law provides a right to refuse to provide identification, the cited statute does no such thing. *See* TEX. PENAL CODE § 38.02 (not requiring a detainee to produce identification under these circumstances, but not speaking to a right to refuse). Because this statute neither proscribes nor protects the conduct at issue in this case, it is inapplicable.

No. 21-20118

IV.

Evans also appeals the district court's admission of evidence—namely, a screenshot of the arrest warrants for Prejean—over his objections. We review a district court's evidentiary rulings, even on summary judgment, for "manifest error." *Chevron Oronite Co., L.L.C. v. Jacobs Field Servs. N. Am., Inc.*, 951 F.3d 219, 227 (5th Cir. 2020) (internal quotation marks omitted). Manifest error must be "plain and indisputable," and so unjustified as to constitute "a complete disregard of the controlling law." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 615 (5th Cir. 2018) (internal quotation marks omitted).

Evans argues that the screenshot is hearsay and that it cannot be authenticated by anything other than Lindley's testimony. The district court held that the screenshot was not hearsay because it was not being used to establish the truth of the matter asserted, and that it "satisfie[d] the low standard for authentication" of Federal Rule of Evidence 901. *Evans*, 2020 WL 6504449, at *1. On appeal, Evans cites a single case, *United States v. Higdon*, that stands for the general proposition that a jury's role includes evaluating witness testimony at trial. 832 F.2d 312, 315 (5th Cir. 1987). We cannot conclude, based on this meager showing, that the district court committed manifest error. Thus, we affirm.

V.

We hold that Evans has waived his argument that the district court improperly disregarded his search-and-seizure claim by his failure to raise that argument in his opening brief. We affirm the district court's grant of summary judgment on Evans' unlawful detention claim because Evans failed to create a genuine dispute of material fact as to whether Lindley violated a constitutional right. Finally, we affirm the district court's admission of the

No. 21-20118

arrest warrant screenshot because it was not manifest error. For these reasons, the district court's judgment is AFFIRMED.